UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISTON D. CALLWOOD,           )
                             )
              Petitioner,     )
     v.                       )          CRIMINAL ACTION NO. 09-10313-JLT
                             )
UNITES STATES OF AMERICA,     )
                             )
              Respondent.     )

# REPORT AND RECOMMENDATION ON MOTION
# TO VACATE, SET ASIDE OR CORRECT SENTENCE
# PURSUANT TO 28 U.S.C. § 2255

March 7, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

On April 7, 2010, the Petitioner, Liston D. Callwood, pleaded guilty to a one-count

indictment charging him with being a felon in possession of a firearm and ammunition.  He was

sentenced as an armed career criminal to a term of imprisonment of 15 years, to be followed by

five years of supervised release.  His sentence and conviction were affirmed by the First Circuit in

a summary opinion issued on April 27, 2012.  United States v. Callwood, Docket No. 11-1556.

On August 6, 2013, Callwood filed the instant "Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody."  (Docket No. 59)

("Mot.").  Therein he raises the following Grounds: (1) that he was denied effective assistance of

counsel, in violation of his Sixth Amendment rights, due to the fact that counsel failed to file a

writ of certiorari following the denial of his appeal, and failed to so notify the Petitioner in a

timely manner; (2) that he was denied effective assistance of counsel, in violation of his Sixth

Amendment rights, due to, inter alia, counsel's failure to file a motion to suppress, failure to challenge the sufficiency of the warrant, failure to challenge the authenticity of the alleged drugs recovered, and failure to challenge possession of a firearm seized during the execution of the search warrant; and (3) that he received an illegal sentence that was enhanced by factors that were not presented in the charging indictment nor presented to a jury. Callwood has requested an evidentiary hearing to resolve all factual disputes.

The government contends that the Motion is untimely and without merit. Thus, the government argues that the matter should be summarily dismissed, or denied on the merits without a hearing. In response, Callwood contends that the doctrine of equitable tolling should apply, and that this court should consider the merits of his claim and not dismiss it as untimely.

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Vacate be DENIED. Not only is the Motion untimely, but it also fails to state a claim warranting § 2255 relief. No evidentiary hearing is required.

## II.  STATEMENT OF FACTS

### Procedural Background

According to Callwood, this case began as a drug investigation conducted by the Boston Police Department Special Investigation Unit. (Pet. Mem. (Docket No. 62) at 2). In response to information provided by an unidentified confidential informant, the Boston Police obtain a "no-knock" search warrant for an apartment which Callwood was known to visit on occasion. (Id.). The warrant was executed on March 19, 2009 by Boston Police and others. (Id.). Callwood was arrested and charged with a series of criminal offenses. (Id.).

On April 8, 2009, a criminal complaint was issued against Callwood in the United States District Court, District of Massachusetts, charging him with being a felon in possession of a firearm and ammunition. (Docket No. 1). He was arrested on this charge while in state custody on September 18, 2009. This court appointed the Federal Defenders' Office to represent him. (Docket Entry 9/18/09). On or about September 19, 2009, all state charges against Callwood were nolle prossed. (Pet. Mem. at 2). Callwood retained private counsel, Michael Doolin, to replace the Federal Defenders' Office. (Docket Entry 9/23/09). Attorney Doolin represented him throughout the District Court proceedings and appeal to the First Circuit.

On October 21, 2009, a federal grand jury, sitting in Boston, returned a one-count indictment charging Callwood with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 6). Callwood was arraigned on October 30, 2009. (Docket Entry 10/30/09). He pleaded guilty on April 7, 2010, and was sentenced a year later, on April 7, 2011, as an armed career criminal. (Docket Entries 4/7/10, 4/7/11).

### The Pre-Sentence Report

In connection with his sentencing, the Massachusetts Probation Department issued a Pre-Sentence Report ("PSR") with a final date of December 10, 2010. Therein, Probation noted that Callwood would be entitled to a 3 level reduction in his offense level due to his acceptance of responsibility. (PSR ¶¶ 19, 29, 33). Without an enhancement as an armed career criminal pursuant to 18 U.S.C. § 924(e), this would have brought Callwood's offense level down to 25. (PSR ¶ 30).[1] However, as an armed career criminal, Probation determined that his offense level

---

[1] In calculating his offense level as 25, Probation had added 4 points on the grounds that the defendant used or possessed a firearm in connection with another felony offense, specifically drug distribution. (PSR ¶ 24). Callwood challenged this finding on the grounds that there was

was 31 (34 minus 3).  (PSR ¶¶ 32-34).  Moreover, as an armed career criminal, Probation

determined that Callwood was subject to a minimum 15 year sentence of imprisonment.  (PSR

¶ 135).

In identifying Callwood as an armed career criminal, the Probation Department relied on

two prior drug convictions and four crimes of violence.  Specifically, the following convictions

were identified in the PSR as predicates for Callwood's armed career criminal status (see PSR

¶ 62):

| | |
|---|---|
| PSR ¶ 39 | Manufacturing/distributing/dispensing a Class B controlled substance (1991) |
| PSR ¶ 43 | Assault & battery on a police officer (1993) |
| PSR ¶ 45 | Possession with intent to distribute/manufacture a Class B controlled substance (1994) |
| PSR ¶ 51 | Assault & battery on a police officer; resisting arrest (1998) |
| PSR ¶ 55 | Resisting arrest; assault & battery on a police officer (2004) |
| PSR ¶ 56 | Resisting arrest (2007) |

Callwood filed objections to the PSR.  (Docket No. 23).  He also filed a Sentencing

Memorandum.  (Docket No. 35).  Therein he challenged his offense level calculation.  (See note

1, supra).  He argued further that Probation erred in concluding that he was an armed career

offender.  Specifically, but without limitation, Callwood argued that "any prior convictions for

career offender sentencing enhancement purposes violates his Fifth and Sixth Amendment rights

"no evidence of any cocaine possession, let alone distribution, because the government did not
analyze the substance alleged to be cocaine" and the small amount of marijuana found in any
proximity to the firearm suggested personal use as opposed to distribution.  (Docket No. 35 at 8).
Thus, he argued, the appropriate level was 21.  (Id. at 11).

that the matters be pleaded in the indictment and proven to a jury beyond a reasonable doubt

before they may be considered as career offender predicate convictions."  (Docket No. 35 at 1).

In addition, relying on Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265, 176 L. Ed. 2d 1

(2010), and United States v. Holloway, 499 F.3d 114 (1st Cir. 2007), Callwood argued that the

assault crimes of which he had been previously convicted did not involve the requisite "violent

force" to qualify as "violent felonies" so as to serve as predicates for armed career offender status.

(Docket No. 35 at 2-5).

Callwood's objections were overruled by the trial judge.  Thus, the trial judge accepted

the PSR conclusion that Callwood was an armed career criminal, and sentenced him to 15 years

imprisonment followed by five years of supervised release.  (Docket No. 38).

## Callwood's Appeal

Callwood filed a notice of appeal on April 14, 2011.  (Docket No. 37).[2]  Callwood's

counsel filed his appellate brief on September 21, 2011.  (Gov't Opp. (Docket No. 61) at 4).  The

government moved for a summary disposition on October 24, 2011.  (Id.).  On April 27, 2012,

the First Circuit allowed the government's motion, and issued its judgment.  (Docket No. 56).

The First Circuit ruled that assault and battery on a police officer (ABPO) and resisting arrest are

categorically "violent felonies" for armed career criminal purposes, as previously established in

United States v. Dancy, 640 F.3d 455, 470 (1st Cir.), cert. denied, 132 S. Ct. 564, 181 L. Ed. 2d

407 (2011), and United States v. Weekes, 611 F.3d 68, 73 (1st Cir. 2010), cert. denied, 131 S.

---

[2]  On or about July 7, 2011, Callwood filed a letter with the court asking for a lawyer on appeal.  (Docket No. 48).  This request was denied by the District Judge on July 13, 2011 due to the fact that the records indicated that Attorney Doolin was still representing Callwood.  (See Docket No. 50).

Ct. 3021, 180 L. Ed. 2d 850 (2011) (reaffirming United States v. Almenas, 553 F.3d 27 (1st Cir. 2009)).  The First Circuit further ruled that the fact that the jury did not find beyond a reasonable doubt that he had the requisite predicate felonies did not violate Callwood's constitutional rights, as previously established in United States v. Farrell, 672 F.3d 27, 37 n.12 (1st Cir. 2012) (citing Amendarez-Torres v. United States, 523 U.S. 224 (1998)).

### Post-Appeal Events

It is undisputed that Callwood did not submit a petition for a writ of certiorari with the Supreme Court of the United States within 90 days of the April 27, 2012 entry of judgment by the First Circuit, and that, as a result, his conviction became final on July 26, 2012.  See Clay v. United States, 537 U.S. 522, 532, 123 S. Ct. 1072, 1079, 155 L. Ed. 2d 88 (2003) (one year period for filing habeas petition begins to run when time for seeking certiorari expires); Ramos-Martinez v. United States, 638 F.3d 315, 321 (1st Cir. 2011) (writ of certiorari must be filed within 90 days of entry of judgment by a court of appeals).  The parties agree further that Callwood filed his instant motion under § 2255 on August 6, 2013, when he mailed it to the court. (See Gov't Resp. (Docket No. 64) at 2-3).  The parties agree that the one year period permitted for filing his motion to vacate expired on July 26, 2013, so the filing was late.  (Id.).  Since Callwood contends that his counsel failed to honor his instructions to file a petition for certiorari, and that equitable tolling should apply despite the untimeliness of his present motion, the events following the First Circuit's decision will be detailed herein.

According to Callwood, he spoke to his counsel in May 2012 regarding the denial of his direct appeal, and his attorney promised to file a writ of certiorari on his behalf. (Pet. Mem. at 2;

see also Callwood Aff. (Docket No. 65-1) at ¶¶ 3-5).  Callwood has submitted what purports to

be a letter from his counsel, dated May 1, 2012, in which counsel wrote:

> I have enclosed the judgment of the First Circuit denying our appeal.  I will
> work on getting the Dorchester Court case closed during the month of
> May.  Please call collect with any questions that you have.  The best time
> to get me is at 4:30 p.m. or Sunday afternoon.

(Pet. Mem. at Ex. A).[3] Thus, there is nothing in the May 2012 communication which indicated a

promise to file a petition for a writ of certiorari.

Callwood does not allege any further communications with counsel in the 90 day period

for filing the certiorari petition.  The next communication to which he refers is what purports to

be a letter from counsel dated January 8, 2013.  (See Callwood Aff. at ¶ 6).  Therein counsel

wrote:

> I will resolve the Dorchester case for you.  Please give me a collect call late
> in the afternoon.  I haven't in any way tried to ignore you or your
> concerns.

(Pet. Mem. at Ex. B).  Again, there is no mention in the written communication about filing a

petition for a writ of certiorari.

There is no additional evidence in the record of any communication with counsel within

the one year period for filing the § 2255 motion.  The next communication submitted by Callwood

purports to be a copy of a letter he sent to Attorney Doolin on July 30, 2013, shortly after the one

year period expired.  (See Callwood Aff. ¶ 9).  Therein Callwood complains about not being able

to reach counsel for about a month, and asserts that counsel had not responded to his inquiries

---

[3]  Callwood has submitted the same documents as exhibits to his Opposition to the
government's Response to the Motion to Vacate (Docket No. 65) ("Pet. Opp."), plus an
additional letter dated October 8, 2013 from the U.S. Supreme Court confirming that he has no
case pending there.

either by mail or phone.  (Pet. Mem. at Ex. D).  He further asserts that "it is my understanding

that you would have filed a writ of certiorari with the United States Supreme Court" on his

behalf.  (Id.).  On the same day, July 30, 2013, it appears that Callwood wrote the United States

Supreme Court to inquire about "the status of my writ of certiorari[.]"  (Pet. Mem. at Ex. D-2).

In his Affidavit, Callwood asserts that through his wife he then "became alerted on or

about August 2, 2013 to the facts [sic] that I did not have a writ of certiorari filed with U.S.

Supreme Court."  (Callwood Aff. ¶¶ 13, 15).  He then filed his motion under 28 U.S.C. § 2255 on

August 6, 2013.  (Id. ¶ 14).  He contends that if he had known that Attorney Doolin had failed to

file a writ of certiorari on his behalf, he would have filed one pro se.  (Id. ¶ 17).  In addition, he

contends that he would have filed his motion under § 2255 within the one year period allowed

under the AEDPA.  (Id. ¶ 18).

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.    Standard of Review

28 U.S.C. § 2255 "contemplates four potential bases on which a federal prisoner may

obtain relief: (1) 'that the sentence was imposed in violation of the Constitution or laws of the

United States'; (2) 'that the court was without jurisdiction to impose such sentence'; (3) 'that the

sentence was in excess of the maximum authorized by law'; or (4) that the sentence 'is otherwise

subject to collateral attack.'"  Damon v. United States, 732 F.3d 1, 3 (1st Cir. 2013) (quoting 28

U.S.C. § 2255(a)).  The final category includes "only assignments of error that reveal fundamental

defects which, if uncorrected, will result in a complete miscarriage of justice, or irregularities that

are inconsistent with the rudimentary demands of fair procedure."  David v. United States, 134

F.3d 470, 474 (1st Cir 1998) (quotation omitted).  See also Moreno-Morales v. United States,

334 F.3d 140, 148 (1st Cir. 2003).  "Section 2255 is not a surrogate for a direct appeal[,]" and

the burden is on the petitioner to establish that he is entitled to relief under § 2255.  David v.

United States, 134 F.3d at 474.

        In the instant case, Callwood has brought claims for ineffective assistance of counsel.

These claims may be brought under 28 U.S.C. § 2255.  See United States v. King, 741 F.3d 305,

310 n.3 (1st Cir. 2014) ("The defendant may, of course, pursue such a claim [of ineffective

assistance of counsel] through a petition for collateral relief under 28 U.S.C. § 2255.").[4]  Accord

United States v. Neto, 659 F.3d 194, 203 (1st Cir. 2011).  Similarly, Callwood's contention that

he was improperly classified as an armed career criminal in violation of his constitutional rights is

appropriately decided in a § 2255 motion.  See United States v. Duval, 957 F. Supp. 2d 100, 105-

06 (D. Mass. 2013) (court considers contention that predicate assault did not qualify as a violent

felony in the context of a § 2255 petition).  Nevertheless, for the reasons detailed herein, this

court concludes that Callwood's § 2255 motion should be denied.

**B.    Evidentiary Hearing**

        As an initial matter, Callwood has requested an evidentiary hearing to resolve all disputed

issues of fact.  This court recommends that the request for a hearing be denied, as Callwood has

not met his burden of establishing the need for such a hearing.  As the First Circuit has explained:

> Section 2255 requires an evidentiary hearing "(u)nless the motion and the
> files and records of the case conclusively show that the prisoner is entitled
> to no relief."  Rule 4(b) of the Rules Governing § 2255 Proceedings.

---

[4]  Where, as here, trial and appellate counsel are one and the same, claims of ineffective
assistance of counsel are also typically brought in a motion for a new trial.  Barry v. Ficco, 392 F.
Supp. 2d 83, 97 (D. Mass. 2005), and cases cited.

> While the defendant bears the burden of establishing by a preponderance of
> the evidence that he is entitled to  relief and to an evidentiary hearing,
> United States v. DiCarlo, 575 F.2d [952, 954 (1st Cir. 1993)], the court
> "must take the defendant's allegations as 'true except to the extent that they
> are contradicted by the record or are inherently incredible, and to the extent
> that they are merely conclusions rather than statements of fact.'" Otero v.
> United States, 494 F.2d 900, 902 (1st Cir. 1974); Domenecia v. United
> States, 292 F.2d 483, 484 (1st Cir. 1961).  The "district court may deny a
> hearing so long as it does so on the basis of the facts as alleged by the
> defendant and so long as it would be within the court's discretion to do so
> were the facts alleged by the defendant true." United States v. Fournier,
> 594 F.2d 276, 279 (1st Cir. 1979).  A hearing is not necessary "when a
> § 2255 motion (1) is inadequate on its face, or although facially adequate is
> conclusively refuted as to the alleged facts by the files and records of the
> case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974).

Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980).  See also Owens v. United States, 483

F.3d 48, 57 (1st Cir. 2007).  As detailed herein, in the instant case, even accepting Callwood's

allegations as true, he is not entitled to collateral relief.  Therefore, no evidentiary hearing is

necessary.  See Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984) (no evidentiary

hearing required where, accepting facts as true, petitioner is not entitled to § 2255 relief).

## C.    Timeliness

Section 2255 motions are subject to a one-year limitation period.  18 U.S.C. § 2255(f).

The one-year period runs from the latest of one of four dates, including

> (1)    the date on which the judgment of conviction becomes final;
>
> (2)    the date on which the impediment to making a motion created by
> governmental action in violation of the Constitution or laws of the United
> States is removed, if the movant was prevented from making a motion by
> such governmental action;
>
> (3)    the date on which the right asserted was initially recognized by the
> Supreme Court, if that right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on collateral review; or

(4)      the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

18 U.S.C. § 2255(f)(1)-(4).  In the instant case, the parties agree that the relevant onset date is the date on which Callwood's judgment of conviction became final, i.e., July 26, 2012, when the period for filing a petition for writ of certiorari expired.  Griffith v. Kentucky, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 712 n.6, 93 L. Ed. 2d 649 (1987) ("[F]inal" is when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").  Since his § 2255 motion was filed on August 6, 2013, it was untimely.

Callwood argues that this court should apply the doctrine of equitable tolling and accept his motion as timely filed.  See Ramos-Martinez v. United States, 638 F.3d 315, 322 (1st Cir. 2011) (Court holds that "section 2255(f)'s one-year limitations period is subject to equitable tolling in appropriate instances.").  Equitable tolling is to be invoked only "sparingly" and in "extraordinary circumstances."  Id. at 322-23, and cases cited.  Thus, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (internal quotation and citation omitted).  The burden is on the petitioner seeking to invoke equitable tolling to establish the basis for the application of the doctrine.  See Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010), and cases cited.  Callwood has not met his burden.

Callwood seeks to invoke the doctrine of equitable tolling on the basis that counsel did not advise him that he had not filed a petition for a writ of certiorari as he had promised.  Callwood

has submitted a detailed affidavit and exhibits in support of his contention that he is entitled to equitable tolling.[5]  However, a review of Callwood's own affidavit establishes that he took no steps for more than a year to determine whether or not counsel had filed a petition on his behalf.  After learning that his appeal had been denied at the beginning of May 2012, he did not speak further to counsel in the 90 day period after the First Circuit denied his direct appeal during which time the petition had to be filed.  He did not even speak to counsel for another year, during which time he could have filed a pro se § 2255 motion.  He also did not reach out to the Supreme Court, or any other court, in this period to determine if a petition had been filed.  Under such circumstances, Callwood has failed to establish that he had been pursuing his rights diligently.

Similarly, there is nothing in the record which would support a finding that "extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline."  Trenkler v. United States, 268 F.3d 16, 25 (1st Cir. 2001) (quoting Fradella v. Petricca, 183 F.3d 17, 21 (1st Cir. 1999)).  A most liberal reading of Callwood's submissions establishes that counsel failed to return his calls or respond to his letter, and failed to respond to his family's inquiries.  If anything, this should have motivated Callwood to confirm that the petition had been filed by counsel – it certainly was not conduct which affirmatively misled him into believing that the petition had been filed.  Moreover, none of the correspondence from counsel which Callwood submitted indicated an intention on the part of counsel to file a petition for certiorari on Callwood's behalf.  This court recognizes "that unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be

---

[5]  In light of this affidavit and exhibits, there is no reason to have an evidentiary hearing to further develop the record, since the court will accept Callwood's facts as true.

'extraordinary'" enough to warrant the application of equitable tolling.  Holland v. Florida, 560

U.S. at 651, 130 S. Ct. at 2564, and cases cited.  Here, however, the record does not support

such a conclusion.  It is well established that even attorney miscalculation of a limitations period

"is simply not sufficient to warrant equitable tolling, particularly in the postconviction context

where prisoners have no constitutional right to counsel."  Lawrence v. Florida, 549 U.S. 327,

336-37, 127 S. Ct. 1079, 1085, 166 L. Ed. 2d 924 (2007).  Clearly, then, silence as to a

limitations period is similarly insufficient to support the application of equitable tolling.

Therefore, this court recommends that Callwood's § 2255 motion be dismissed as untimely.

**D.      Ineffective Assistance of Counsel**

Assuming, arguendo, that Callwood's § 2255 motion is considered timely, it must still fail

on the merits.  The record does not support his claims of either ineffective assistance of counsel or

of an illegal sentence.

With respect to his claims of ineffective assistance of counsel, the well-recognized

standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d

674 (1984).  As the Strickland court held:

> A convicted defendant's claim that counsel's assistance was so defective as
> to require reversal of a conviction or death sentence has two components.
> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel was
> not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient perfor-
> mance prejudiced the defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes both showings, it cannot be said
> that the conviction or death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064.  Callwood has failed to meet either prong.

**Failure to File Petition for Writ of Certiorari**

Callwood contends that it was ineffective assistance of counsel for his attorney to fail to file a petition for a writ of certiorari with the United States Supreme Court. However, as the Supreme Court itself has held, a petition for a writ of certiorari is a discretionary appeal. Since a criminal defendant has no constitutional right to counsel in connection with a petition for certiorari to the Supreme Court, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S. Ct. 1300, 1301, 71 L. Ed. 2d 475 (1982). In short, "[c]riminal defendants are not deprived of effective assistance of counsel when counsel fails to file a timely application for certiorari." Martinez v. United States, No. 08-cv-10782-PBS, 2008 WL 5216248, at *2 (D. Mass. Dec. 11, 2008), and cases cited. This is true even if the defendant instructed counsel to do so. See Asadoorian v. Ficco. No. Civ.A. 02-11534-DPW, 2004 WL 1932753, at *11 (D. Mass. Aug. 23, 2004), and cases cited (attorney's failure to raise all issues in post-conviction matters that the defendant wanted was not ineffective assistance of counsel: "the case law makes clear that a federal habeas petition cannot be grounded in a claim of ineffective assistance of counsel in the post-conviction setting."). Thus, Callwood's claim of ineffective assistance of counsel based on an alleged failure to file a petition for certiorari with the United States Supreme Court must fail.

**Failure to File Motion to Suppress or Challenge Evidence**

Callwood contends that his counsel was ineffective in failing to file a motion to suppress, or to challenge the authenticity of the drugs seized during the execution of the search warrant, or to challenge his possession of a firearm seized during the search warrant execution. None of

these issues were raised in the trial court, or in his direct appeal to the First Circuit.[6]  These

arguments, too, fail to state a claim under § 2255 and should be dismissed.

### Callwood's Guilty Plea

As an initial matter, there is no basis to review Callwood's claims in light of his guilty plea.

Callwood has not challenged his plea.  Under these circumstances, he cannot challenge the status

of the factual record at the time he entered his plea.  As the court held in <u>Gioiosa v. United States</u>,

684 F.2d 176 (1st Cir. 1982):

> Because conviction on a guilty plea is based solely on the plea, not on the
> evidence, there is no point in examining the evidence unless it coerced the
> plea or made it involuntary.  There is no such allegation here.

<u>Id.</u> at 180.  Therefore, in the instant case, as in <u>Gioiosa</u>, the petitioner "is precluded from

challenging the evidence in his § 2255 motion."  <u>Id.</u>

This court also notes that under the case law of the United States Supreme Court, it is not

<u>per se</u> ineffective assistance of counsel to recommend accepting a plea, even if there is a sound

basis to challenge the admissibility of evidence.  As the Supreme Court recently held:

> The stakes for defendants are high, and many elect to limit risk by forgoing
> the right to assert their innocence.  A defendant who accepts a plea bargain
> on counsel's advice does not necessarily suffer prejudice when his counsel
> fails to seek suppression of evidence, even if it would be reversible error
> for the court to admit the evidence.

---

[6]  The government contends that Callwood waived these arguments by failing to bring
them in his direct appeal.  Since, however, he was represented by the same counsel at trial and on
appeal, it is generally recognized that claims of ineffective assistance of counsel are appropriately
raised either in a motion for a new trial or in connection with a § 2255 motion.  <u>See</u>, <u>e.g.</u>,
<u>Commonwealth v. LeFave</u>, 430 Mass. 169, 172 n.3, 714 N.E.2d 805, 807 n.3 (1999) ("Because
counsel on the defendant's direct appeal were also her trial counsel, the failure of counsel to argue
on direct appeal that they were ineffective at trial is not treated as a waiver.").

Premo v. Moore, 131 S. Ct. 733, 744, 178 L. Ed. 2d 649 (2011).  In the instant case, Callwood received a three point reduction in his criminal history calculation due to his acceptance of responsibility.  If Callwood had prevailed on his argument that he was not an armed career criminal, the three point credit would have been significant.  Therefore, the record establishes that there was a strategic reason for Callwood to enter a guilty plea.  Callwood has not raised any issues which would require the court to ignore his guilty plea.  Therefore, this court recommends that Callwood's § 2255 petition, based on ineffective assistance of counsel, be dismissed.

## Challenges to the Search Warrant

Even if the court were to address the merits of Callwood's claims of ineffective assistance of counsel, the claims would fail.  Each of his objections to counsel's actions will be discussed briefly herein.

Callwood contends that counsel was ineffective due to his "[f]ailure to have alleged drugs which was the basis for 'no-knock' search warrant authenticated."  (Pet. Mem. at 9-10).  Specifically, he argues that according to the affidavit submitted in support of the search warrant, "a series of drug transactions was alleged to have been conducted between petitioner and a still unidentified cooperating informant" and "these transactions provide probable cause for a search warrant to be issued.  The affidavit, however, fails to include any drug amounts or quantity, nor does it alleges [sic] that the actual drugs were tested and authenticated."  (Id. at 10).  Callwood argues further that the drugs needed to be tested "in order to find out if probable cause was ever truly established" and that his counsel's failure to pursue that testing rendered him ineffective. (Id.).

Callwood has not submitted the search warrant at issue, but this court will assume for purposes of his motion that Callwood's description of the warrant is true. Nevertheless, Callwood's argument must fail because the authenticity of the drugs was not critical to a finding of probable cause. "An affidavit supporting a search warrant is presumptively valid." United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013). "For a warrant to be voided and the fruits of a search excluded, the defendant must: (1) show that the affiant in fact made a false statement or omission 'knowingly and intentionally, or with reckless disregard for the truth,' (2) make this showing by a preponderance of the evidence, and (3) show that, with the recklessly omitted information added to the affidavit, the reformed affidavit fails to establish probable cause." Id. (citing United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006)). In the instant case, regardless of the amount or authenticity of the drugs, Callwood does not allege that the affiant knew that information from the confidential informant about drug dealing from the apartment was false. Thus, he does not allege that the affiant either knew that the informant was lying or recklessly disregarded the truth when making the affidavit. Therefore, the affiant was entitled to rely on the information provided by the confidential informant to establish probable cause. It is well-established that the fact that the informant may have been in error does not negate probable cause for the warrant. See United States v. Santiago, 936 F. Supp. 49, 52-53 (D.P.R. 1996) (fact that informant may have been lying does not support a challenge to a search warrant absent evidence that the affiant "either intentionally or recklessly disregarded the truth.").

This court notes further that the record reflects a strategic reason for counsel not to have sought to have the drugs tested. Thus, in connection with his argument that Callwood's offense level should be reduced for sentencing purposes, counsel argued that the government's failure to

analyze the drugs found in the search precluded any finding that Callwood had used or possessed a firearm in connection with another felony, i.e., drug distribution. (See note 1, supra). The use of a firearm in connection with another felony offense results in a four point enhancement. Therefore, it was to Callwood's advantage to avoid the possibility that the samples would have tested positive for illegal drugs.

Callwood further argues that counsel was ineffective because he "failed to compel the government to provide the identity of the cooperating informant, and his/her prior history of assistance provided to law enforcement agencies." (Pet. Mem. at 11). Such information, according to Callwood, was necessary "to properly marshal a defense against [the] charges" against him, and to potentially impeach the informant. (Id.). Assuming that Callwood is challenging the sufficiency of the search warrant with respect to its description of the confidential informant, he has failed to state a claim.

Under Massachusetts law, the court follows a two-pronged test in evaluating a search warrant based on information provided by an unidentified informant, as set out in Spinelli v. United States, 393 U.S. 410, 415, 89 S. Ct. 584, 588-89, 21 L. Ed. 2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 114, 84 S. Ct. 1509, 1514, 12 L. Ed. 2d 723 (1964). See Commonwealth v. Alvarez, 422 Mass. 198, 203, 661 N.E.2d 1293, 1298 (1996). Thus, the supporting affidavit must provide "facts showing some of the underlying circumstances leading to the informant's knowledge, as well as his reliability . . . .  If the informant's tip fails to satisfy one of these portions of the Aguilar test, other independent, corroborating allegations in the affidavit may supplement the informant's tip to support a finding of probable cause. . . . " Id. (internal quotation and citation omitted). See also United States v. Gifford, 727 F.3d 92, 99 (1st Cir.

2013) ("Where the primary basis for a probable cause determination is information provided by a confidential informant, the affidavit must provide some information from which a magistrate can credit the informant's credibility."  A "non-exhaustive list of factors" to consider in evaluating the affidavit includes "(1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect first-hand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable or practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information.").

In the instant case, Callwood has not attached the search warrant so its sufficiency cannot be measured against these standards.  Callwood has, however, attached a Report of Investigation describing a controlled buy of narcotics by the confidential informant from Callwood at the apartment covered by the search warrant.  (Pet. Mem. at Ex. E).  The report indicates that on March 3, 2009, the informant was outfitted with an electronic monitoring device, and that law enforcement conducted surveillance of the confidential informant's actions, as well as of Callwood's actions leaving the confidential informant in the apartment, going to obtain a bag, and returning to the apartment with the bag to meet with the informant.  (Id.).  Immediately following the meeting in the apartment, the confidential informant was debriefed by law enforcement, and turned over the bag which the informant reported contained the crack cocaine s/he had purchased from Callwood. (Id.).  The confidential informant also spoke to law enforcement at various stages of the transaction when Callwood was out of the apartment.  (Id.).  This report contains sufficient indicia of reliability to support a finding of probable cause.  It shows personal knowledge of the

confidential informant, corroboration by law enforcement, and the opportunity of law enforcement to interact and assess the credibility of the informant.  The controlled buy was sufficiently close in time to the execution of the search warrant to support the finding of probable cause for the warrant.  Callwood has not put forth any evidence to support his contention that counsel's failure to obtain additional information about the confidential informant would have resulted in the invalidation of the search warrant.

### Gathering of Additional Evidence

Callwood also challenges his counsel's alleged failure to obtain various pieces of evidence which allegedly could have enabled him to challenge the strength of the government's case against him.  Significantly, however, Callwood does not allege that he is actually innocent of the crime charged, and does not allege that he would not have pleaded guilty if counsel had obtained the evidence he is seeking.  Before his plea, the government recited the evidence it expected to be able to prove at trial, and Callwood did not challenge this description.  (See Sealed Transcript of Plea Hearing (Docket No. 41) at 8-11)  Similarly, although he addressed the court at sentencing, he did not indicate in any way that his plea was involuntary.  (See Docket No. 42 at 17-20).  At most, Callwood argues that further work on his counsel's part may have resulted in additional information that would have been helpful to him if his case went to trial.  This is not sufficient to establish ineffective assistance of counsel.

A "defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel."  Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419, 172 L. Ed. 2d 251 (2009) (internal citation omitted).  "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within

the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). "It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied." Id. (quotations and citation omitted).

"Under the prejudice prong, not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different." Id. The probability must be "sufficient to undermine confidence in the outcome," and the burden is a "heavy" and "highly demanding" one. Id. (internal quotations and citations omitted). In the context of a guilty plea, to establish prejudice the defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). Thus, "[w]ith respect to the prejudice prong, a petitioner must show that counsel's errors 'affected the outcome of the plea process.'" Gould v. United States, 657 F. Supp. 2d 321, 326 (D. Mass. 2009) (quoting Hill, 474 U.S. at 59, 106 S. Ct. at 370). "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Knight v. Spencer, 447 F.3d at 15.

In the instant case, Callwood has not met either prong. He has not established that counsel's actions were deficient. At most, he hypothecates that further investigation may have revealed some additional helpful information. Furthermore, even assuming that counsel's conduct

did not fall within the range of reasonable professional assistance, Callwood has failed to establish

any prejudice.  Therefore, his § 2255 petition must fail.

Specifically, Callwood faults counsel for failing to obtain a copy of the audio and video

evidence obtained by the government during surveillance.  (Pet. Mem. at 11).  As he argues,

"[v]oice recognition would enable attorney to defend case, once it could be established that

petitioner never had contact with informant as alleged."  (Id.).  However, Callwood does not

allege that he was precluded from putting forth evidence that he did not know the confidential

informant.  Therefore, he has not established any prejudice from counsel's alleged failure to obtain

the recordings.

Callwood similarly asserts that counsel should have obtained a copy of the "pre-search

video of the apartment taken by Detective Marvin Wright" to help establish that materials were

not found in the apartment as reported by police.  (Id. at 12).  Callwood argues that the

documents reportedly found in the apartment were, in fact, taken from his car and backpack and

placed in the apartment by the police.  (Id. at 12, n.12).[7]  This is significant because these

---

[7] According to the PSR, Callwood was seen running from a rear bedroom when the SWAT Team came to execute the search warrant.  He denied living there however.  Callwood was searched, "at which time $1,000 in U.S. currency and a plastic bag containing a substance believed to be marijuana were recovered from Callwood's right front pants pocket, and $550 in U.S. currency were recovered from his left front pants pocket."  (PSR ¶ 11).  In addition, the following items were found in the rear bedroom: "a cellular telephone phone (observed thrown by Callwood); one bag containing a substance believed to be marijuana; a wallet containing a photo ID of Callwood; a cigar box containing two speed loaders in a black leather case [loaded with] eight rounds of assorted ammunition...; personal papers (a birth certificate and social security card) bearing the name Michael Callwood, who was believed to be Callwood's son; one Strum Ruger Six .357 caliber revolver with serial number 1503684, containing six rounds of .357 ammunition; two cellular telephone charging cords; a black zip pouch containing four bags of a substance believed to be crack cocaine; ten plastic bags of a substance believed to be marijuana; personal papers bearing the name Liston Callwood (which were found on a dresser); magazines bearing the name Callwood (different address); an IBM 'Thinkpad' computer; and a parking ticket which was issued to Liston Callwood."  (PSR ¶ 12).

materials supported the government's contention that he lived at the apartment.  However, according to Callwood, himself, he was a "social guest at the location."  (Id. at 14).  Thus, even if the documents were not originally in the apartment, their absence does not preclude a finding that the guns and drugs found in the apartment were his.  In addition, Callwood has not attempted to describe the video, so there is no evidence that all the locations where contraband was reportedly found would have been depicted in the alleged video.  Again, Callwood has not established that he was prejudiced by the absence of the video.

Callwood does not argue that he was precluded from arguing at trial either that he did not live in the apartment, or that the documents had been put there by police.  As Callwood argues, there were facts to support his position that he did not live there.  For example, as Callwood notes, there was no mention of men's clothing listed in the return of the search warrant, "which only reinforces petitioner [sic] assertion that he did not reside at this address."  (Pet. Mem. at 12 n.12).  In addition, some of the documents found listed Callwood as having a different address.  (See note 7, supra).  The absence of the alleged pre-search video did not prevent counsel from asserting that Callwood did not live at the apartment.  Therefore, Callwood has not established prejudice by counsel's failure to obtain the video.

The record also supports a conclusion that counsel may have elected not to obtain a video which could have harmed Callwood's defense.  There was, in fact, strong evidence that Callwood did, in fact, reside in the apartment.  Such evidence included the evidence of surveillance by the police who saw Callwood leaving and returning to the apartment in connection with the controlled drug buy discussed above, and the undisputed fact that Callwood was arrested at the apartment, and was seen leaving the bedroom at the time of his arrest.  (See PSR ¶ 10).  In

addition, the confidential informant placed Callwood at the apartment, and provided evidence that he saw a black revolver in the bedroom.  (Pet. Mem. at Ex. E).  In light of Callwood's admission that he was at least a social guest at the premises, it cannot be said that counsel provided ineffective assistance by failing to obtain a video that may have provided graphic evidence of not only the contraband, but also of Callwood's ties to the premises.

Callwood also challenges counsel for failing to move for discovery of the latent prints found on the gun.  He does recognize, however, that the government would have obtained this analysis if the case continued, and that defense counsel may have avoided moving for the analysis to avoid the possibility of establishing that it was his print on the firearm.  (Pet. Mem. at 13 n.13)  Significantly, Callwood does not assert that there was no possibility that his fingerprints could have been found on the weapon.  Again, he has not established either that counsel's decision not to obtain this information before his plea constituted ineffective assistance of counsel or that it caused him prejudice.

Callwood also faults counsel for failing to investigate or contact "the actual occupant of the apartment" to help in his defense that he did not live there.  (Id. at 14).  He argues "that had attorney Doolin made an attempt to contact this individual, she may have been able to provide exculpatory information which could have help[ed] in his defense."  (Id.).  Again, since Callwood has admitted being a social guest at the apartment, he has not established that the testimony of this unidentified woman would have persuasively established that the firearms and ammunition were not his.  The hypothetical nature of the testimony from this woman does not establish either that counsel's performance was ineffective, or that Callwood was prejudiced by its absence.  In sum,

Callwood's claims of ineffective assistance of counsel based on the alleged failure to obtain evidence do not meet either prong of the Strickland analysis and must fail.

### Failure to Move to Suppress

Callwood also argues that the search of the premises was illegal because by sending the confidential informant into the apartment for a controlled drug buy, "it is obvious that this informant was conducting an illegal warrantless search at the behest of the BPD." (Id. at 15). Since this "illegal warrantless search" was used to obtain the search warrant, according to Callwood, the evidence found should have been suppressed. Callwood has not cited any support for this contention and none has been found. From the record, the police merely arranged for a controlled buy of drugs — an investigatory method that is not illegal.

Finally, Callwood argues that counsel's failure to move to suppress the evidence based on the lack of probable cause for the search warrant, and the absence of proof he had control or possession of the firearm and ammunition, was ineffective assistance of counsel. (Id. at 16). However, as detailed above, Callwood has not established that there was a basis to suppress the fruits of the search, or that the search warrant was invalid. In addition, Callwood has not claimed actual innocence, and there is no evidence that any of the allegedly missing evidence would have caused him not to have entered a plea. Moreover, as detailed above, he has failed to establish that counsel's conduct caused him prejudice.

As noted above, there was a strategic reason for Callwood to plead guilty. If counsel had convinced the trial judge that Callwood was not an armed career criminal, the acceptance of responsibility would have significantly reduced his offense level. This fact, coupled with the fact that Callwood knew the state of the evidence at the time he entered his plea, negates his present

claim of ineffective assistance of counsel.  There is simply no evidence that counsel's performance was deficient, or that Callwood was prejudiced.

> **E.**      **Sentence as Armed Career Criminal**

Finally, Callwood argues that he was improperly classified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  This argument is without merit as a matter of law.

Callwood, relying on <u>Alleyne v. United States</u>, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), argues that the court improperly relied on factors to enhance his sentence that were not heard by a jury or conceded by him.  (<u>See</u> Pet. Mem. at 16).  In <u>Alleyne</u>, the court held "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."  <u>Id.</u> at 2155.  However, as the <u>Alleyne</u> court expressly recognized, this does not apply to "the fact of a prior conviction."  <u>Id.</u> at 2160, n.1 (citing <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998)).  The First Circuit has expressly held that, even after <u>Alleyne</u>, a defendant's status as an armed career criminal does not have to be submitted to the jury since a sentence imposed "pursuant to the ACCA [is] based on a determination of a sentencing factor, not a determination of an element of an offense."  <u>United States v. Carrigan</u>, 724 F.3d 39, 51 n.4 (1st Cir. 2013).  Since under Massachusetts law resisting arrest and assault and battery on a police officer categorically count as violent felonies for purposes of the ACCA, Callwood's objection to his status as an armed career criminal must fail.  <u>Id.</u> at 50.

## IV.  **CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Callwood's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket No. 59) be DENIED.[8]


    / s / Judith Gail Dein
    Judith Gail Dein
    U.S. Magistrate Judge

---

[8]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).